Filed 7/13/23  P. v. Mosqueda-Castillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050363 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2107480) |
| v. | |
| AGUSTIN MOSQUEDA-CASTILLO, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Agustin Mosqueda-Castillo pleaded no contest pursuant to a plea agreement to one count of felony false imprisonment effected by menace (Pen. Code, § 236)[1] and one misdemeanor count of annoying a child under 18 years of age (§ 647.6, subd. (a)(1)).  Four counts of lewd or lascivious acts upon a child were dismissed (§ 288, subd. (b)(1)).  In accordance with the plea agreement, defendant agreed to be placed on formal probation for three years.  The trial court, pursuant to the plea agreement, placed defendant on formal probation for three years and ordered him to serve 357 days in county jail as a condition of probation, with credit for 357 days of time served (179 days of actual credit and 178 days of conduct credit).  The trial court also imposed various additional conditions on

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

defendant's probation, including certain specialized search conditions related to defendant's use of electronic devices.

Defendant raises four issues on appeal. First, he contends that this court should reduce his probation term to two years because section 1203.1 sets the maximum term for his felony conviction at two years, and no exception to this two-year limit applies. Second, he asserts that this court should strike as unreasonable two of the specialized search conditions the trial court imposed regarding his use of social media and the Internet, citing *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). Third, he argues that this court should strike these same two specialized search conditions as unconstitutionally overbroad under the First Amendment to the United States Constitution. Finally, he asserts that this court should order the trial court to correct a clerical error in the criminal protective order the trial court issued.

We conclude that the portion of a specialized search condition regarding defendant's accessing of the Internet is unconstitutionally overbroad, and that defendant's criminal protective order should be corrected. We will therefore reverse the judgment and remand the matter to the trial court.

## II. BACKGROUND

Because defendant pleaded no contest on July 29, 2022, waiving his right to a preliminary hearing, the record does not contain extensive information about defendant's actions. The amended complaint filed on the date of defendant's plea states that it attached and incorporated law enforcement reports to establish probable cause for the charged offenses, but no law enforcement report concerning defendant's crimes is included within the appellate record. The prosecution's opposition to defendant's motion for bail or pretrial release indicates that defendant touched his 11-year-old daughter in a sexual manner within the family's home and that he restrained her from leaving when he did so. The prosecution's opposition also attached a sheriff's report concerning sexually explicit messages defendant sent through Facebook Messenger to another daughter (the victim's

2

half-sister) who was 13 years old and lived in another state. The victim disclosed defendant's actions to her half-sister. The victim's half-sister in return informed the victim about these messages, after which the victim reported defendant's actions to authorities. Defendant's actions toward the victim's half-sister were discussed at defendant's sentencing hearing, and defense counsel acknowledged at the hearing that defendant "sent some inappropriate texts."

Defendant was initially charged with four counts of lewd or lascivious acts upon a child (§ 288, subd. (b)(1); counts 1–4). Defendant agreed to plead no contest to later-added charges of felony false imprisonment effected by menace (§ 236; count 5) and misdemeanor annoying a child under 18 years of age (§ 647.6, subd. (a)(1); count 6). In return, the prosecution dismissed the four counts of lewd or lascivious acts upon a child. Defendant agreed to be placed on three years of formal probation, to be sentenced to 357 days in county jail (with 179 days of actual credit for time served plus 178 days of conduct credit), to complete an approved sex offender management program under section 1203.067, to complete a "Parenting Without Violence" class, to register as a sex offender, to be subject to a criminal protective order regarding the victim for ten years with an exception for possible supervised visitation, and to complete substance abuse treatment. Defendant acknowledged with regard to probation that the court would impose "additional conditions that are reasonably related to the charges for which I am convicted or to future criminality."

At defendant's plea hearing, the prosecutor stated that pursuant to the plea agreement, defendant "will stipulate to being placed on three years of formal probation." The trial court then asked, "Is this a DV case?" and the prosecutor replied, "It is -- well, it is." The trial court asked defense counsel if she agreed, and defense counsel replied, "It's a family violence case." The trial court again asked defense counsel whether defendant's case represented a "[f]amily violence" case, and defense counsel agreed that it did. After defendant acknowledged that he understood and agreed to the terms of the plea agreement, he pleaded no contest to counts 5 and 6.

A waived referral memorandum by the probation officer documented that defendant's score on the Static-99R assessment placed his risk for sexual offense recidivism at average. The memorandum recommended that formal probation be granted for three years, in accordance with the plea agreement, and it recommended that defendant's probation be subject to certain conditions, including that defendant complete an approved sex offender management program, refrain from socializing with or forming a romantic relationship with a person who has physical custody of a minor, and consent to searches of his electronic devices. In addition, the memorandum recommended two probation conditions restricting defendant's knowing use of social media and the Internet without prior approval of the probation officer.

At defendant's sentencing hearing on September 2, 2022, the trial court granted formal probation for three years, subject to the waived referral memorandum's recommended conditions. Regarding defendant's use of social media while on probation, the trial court ordered: "The defendant shall not knowingly enter any social networking sites (including but not limited to Facebook, Instagram, Twitter, Snapchat or any other site which the Probation Officer informs him/her of), and/or applications ('apps') pertaining to said accounts nor post any ads, either electronic or written, unless approved by the Probation Officer." Regarding defendant's Internet use while on probation, the trial court ordered: "The defendant shall not knowingly access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer. The defendant shall not knowingly possess or use any data encryption technique program."

Defense counsel objected to several probation conditions, including those regarding searches of defendant's property and electronic devices, and the conditions regarding defendant's use of social media and the Internet, as overbroad and not reasonably related to defendant's crimes or to any anticipated future criminality by defendant. The trial court denied defense counsel's request to strike or modify these conditions, observing as follows:

4

"Even though [defendant] might have used one type of electronic communication, there's many, many different types. And I think that properly supervised, the probation department has to have the ability to monitor all electronic communication devi[c]es that he could possibly use."

Defense counsel also requested that the criminal protective order be modified to allow supervised visitation with the victim, based on indications that she was interested in such visitation. The prosecutor agreed, noting that a family court judge stated that checking boxes 14, 14(a), and 14(b) on the criminal protective order form would enable the family court to facilitate supervised visitation. Box 14 of the criminal protective order form states that the defendant "may have peaceful contact with the protected persons named above, as an exception to the 'no-contact' or 'stay-away' provision in item 11, 12, or 13 of this order, only for the safe exchange of children and court-ordered visitation as stated in" boxes 14(a) and 14(b). Boxes 14(a) and 14(b) refer to family, juvenile, or probate court orders. The trial court voiced no opposition to marking these boxes on the criminal protective order. However, the criminal protective order signed by the trial court marked boxes 14(a) and 14(b) without marking the predicate box 14.

This appeal timely followed.

## III. DISCUSSION

### A. *Probation Term*

Defendant alleges that the trial court was not authorized to impose a three-year probation term based on section 1203.1, subdivision (a), which he asserts limits the maximum probation term for his offenses to two years. As a result, he requests that this court reduce his probation term to two years. The Attorney General responds that the two-year probation limit does not apply because defendant's offenses involved a domestic violence victim under section 1203.097. If the two-year probation limit does apply, the Attorney General argues that the appropriate remedy is to remand the matter for the

prosecution to determine whether to withdraw from the plea agreement and for the trial court to determine if the revised sentence is appropriate.

"We review de novo questions of statutory construction. [Citation.] In doing so, ' "our fundamental task is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' [Citation.] We begin with the text, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation.]' [Citation.] 'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.' [Citation.]" (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.)

Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950) amended section 1203.1 effective January 1, 2021 to restrict the length of felony probation terms to two years except as specified. As amended, section 1203.1 provides: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a), as amended by Stats. 2020, ch. 328, § 2.) Section 1203.1 further provides: "The two-year probation limit in subdivision (a) shall not apply to . . . [a]n offense listed in subdivision (c) of Section 667.5 and an offense that includes specific probation lengths within its provisions." (§ 1203.1, subd. (l)(1).)

Section 1203.097 states: "If a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code, the terms of probation shall include all of the following: (1) A minimum period of probation of 36 months, which may include a period of summary probation as appropriate. . . ." (§ 1203.097, subd. (a)(1).) Family Code section 6211 states that "domestic violence" constitutes abuse perpetrated against any of several listed persons, including a child of a party. (Fam. Code, § 6211, subd. (e).) "Abuse is not limited to the actual infliction of physical injury or assault." (Fam.

6

Code, § 6203, subd. (b).) Instead, "abuse" in this context includes "any of the following: [¶] (1) To intentionally or recklessly cause or attempt to cause bodily injury. [¶] (2) Sexual assault. [¶] (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (4) To engage in any behavior that has been or could be enjoined pursuant to [Family Code] Section 6320." (*Id.*, subd. (a).) "Section 1203.097 does not only apply when a probationer commits the substantive offense of domestic violence. Instead, it 'applies to any person placed on probation for a crime if the underlying facts of the case involve domestic violence, even if the statute defining the crime does not specifically refer to domestic violence.' [Citations.]" (*People v. Forester* (2022) 78 Cal.App.5th 447, 453 (*Forester*).) Section 1203.097 is not limited to those crimes that expressly target domestic violence victims; instead, it applies to an offense "so long as the facts underlying the assault involve a victim defined in Family Code section 6211." (*People v. Cates* (2009) 170 Cal.App.4th 545, 550.)

In *Forester*, the court recognized that an offense against domestic violence victims pursuant to section 1203.097 constitutes an exception to the two-year probation limit of section 1203.1 because "the Legislature most likely incorporated the relevant exception into Assembly Bill No. 1950 to ensure that the bill did not limit the application of section 1203.097 (and other code provisions like it)." (*Forester*, *supra*, 78 Cal.App.5th at p. 457.) Thus, "a defendant who is placed on probation for committing a crime against a victim of domestic violence, as defined by section 1203.097, has committed 'an offense that includes specific probation lengths within its provisions.' (§ 1203.1, subd. (l)(1).) In such circumstances, and in the absence of a contrary legislative indication, the two-year felony probation limitation codified in section 1203.1, subdivision (a) does not apply." (*Forester*, *supra*, at pp. 457–458.) Other courts have reached similar conclusions. (See *People v. Rodriguez* (2022) 79 Cal.App.5th 637, 644 [holding that a "domestic violence offense under section 1203.097 . . . constitutes an exception under section 1203.1 as it is 'an offense that includes specific probation lengths within its provisions.' [Citations]"]; *People v.*

7

*Qualkinbush* (2022) 79 Cal.App.5th 879, 895 ["the two-year probation limit in section 1203.1, subdivision (a), does not apply" to a defendant because her offense fell within section 1203.097].)

Defendant's reply brief does not take issue with the Attorney General's position that an offense involving a domestic violence victim pursuant to section 1203.097 constitutes "an offense that includes specific probation lengths within its provisions" under section 1203.1, subdivision (l)(1), and thus in this situation an exception to section 1203.1's general two-year limit on probation terms applies. Instead, defendant argues: "[T]here has been no admission by [defendant] or factual finding by the trial court that [defendant's] false imprisonment offense constitutes a crime of domestic violence. Without such an admission or finding, respondent's assertion that [defendant's] false imprisonment offense constitutes a crime of domestic violence carries no weight." Defendant further argues that because felony false imprisonment can be effectuated in four ways (violence, menace, fraud, and deceit), "one may be convicted of felony false imprisonment without using violence on the victim." In addition, defendant argues that when the trial court placed him on probation, it "never made any sort of factual finding that [defendant] committed false imprisonment by means of violence." We reject defendant's arguments because the trial court, based on the position of the prosecution and defense counsel, impliedly found that defendant's actions fell within section 1203.097, and thus the three-year probation term was authorized.

Defendant's plea hearing took place on July 29, 2022, well after the January 1, 2021 effective date of the two-year probation limit in section 1203.1. The trial court was apparently aware of the two-year probation limit, because when the prosecution noted that defendant agreed to a three-year probation term, the trial court asked, "Is this a DV case?" The prosecutor agreed that defendant's case constituted a case of domestic violence, and defense counsel likewise twice concurred that defendant's case represented a "family violence" case. Only after the parties agreed that defendant committed an act of domestic or family violence did the trial court approve the plea agreement for a three-year probation

8

term. Thus, the trial court made an implied finding that defendant's actions fell under section 1203.097.

The parties' position that defendant engaged in an act of domestic or family violence was supported by the record. Defendant pleaded no contest to felony false imprisonment of his daughter, which is defined as "the unlawful violation of the personal liberty of another." (§ 236.) While defendant's reply brief asserts that the record does not indicate the means by which defendant effected the felony false imprisonment, the first amended complaint specifically charged defendant with false imprisonment "being effected by menace," and defendant likewise acknowledged in an advisement of rights form that he agreed to plead guilty to false imprisonment "by menace." "False imprisonment is a misdemeanor unless it is 'effected by violence, menace, fraud, or deceit,' in which case it is a felony. [Citation.]" (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490.) In the context of felony false imprisonment, " '[m]enace is a threat of harm express or implied by words or act. [Citations.]' [Citation.] 'An express threat or use of a deadly weapon is not necessary.' [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 123.)

Under these circumstances, the trial court did not err in imposing a three-year probation term based on its implied finding that defendant's crimes were governed by the three-year minimum probation requirement of section 1203.097, not the two-year probation limit of section 1203.1. Defendant pleaded no contest to felony false imprisonment effected by menace, meaning he admitted to threatening harm against his daughter. Defendant's victim was his child, and thus section 1203.097's requirement that the act of domestic violence be committed against a family member as defined in Family Code section 6211 was satisfied. Defendant, represented by counsel, agreed to a three-year probation term more than 18 months after the two-year general probation limit enacted by Assembly Bill 1950 went into effect. When the trial court asked regarding the term of probation whether defendant's case involved domestic violence, both the prosecution and defense counsel, in defendant's presence, agreed that it did. Defendant also acknowledged that he heard the

9

discussion in the plea hearing, that he agreed to the resolution outlined in his plea agreement, and that he had enough time to review the plea agreement with his attorney. Therefore, we find that the two-year probation limit of section 1203.1 does not apply to defendant because he admitted that he committed a crime of domestic or family violence under section 1203.097, which requires a minimum probation period of 36 months. (*Forester*, *supra*, 78 Cal.App.5th at p. 457.) Because we will remand this matter for the trial court to address the conditions of defendant's probation, we will order the trial court upon remand to include any of the conditions required by section 1203.097 in its order of probation.

**B.** *Specialized Search Conditions*

**1. Legal Principles and Standard of Review**

" 'The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) "Accordingly, the Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . .' (Pen. Code, § 1203.1, subd. (j).)" (*Ibid.*) "On appeal, '[w]e review conditions of probation for abuse of discretion.' [Citation.] That is, a reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable. [Citation.]" (*People v. Moran* (2016) 1 Cal.5th 398, 403 (*Moran*).) "Although the trial court's discretion is broad in this regard, we have held that a condition of probation must serve a purpose specified in Penal Code section 1203.1. [Citations.]" (*Olguin*, *supra*, at p. 379.)

"The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. [Citation.] A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*, 15 Cal.3d at p. 486, fn. omitted.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.]" (*Olguin*, *supra*, 45 Cal.4th at p. 379.) The last *Lent* requirement – that a probation condition be reasonably related to future criminality – "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition. [Citations.]" (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1122 (*Ricardo P.*).) Courts "may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Ibid.*)

"When significant privacy interests are implicated by a probation condition (such as sweeping electronics searches without a warrant), the burden imposed on a defendant is a heavy one. Such a condition is unreasonable unless it is 'proportional to achieving some legitimate end of probation.' [Citation.] Reasonableness necessitates 'more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality.' [Citation.] In other words, to justify a burdensome condition, there must be a specific relationship—grounded in the facts of the case—between the condition and preventing future criminality." (*People v. Cota* (2020) 45 Cal.App.5th 786, 790 (*Cota*).)

In addition to the *Lent* requirements, probation conditions may not be overbroad under the First Amendment to the United States Constitution. "With respect to the standard

of review, while we generally review the imposition of probation conditions for abuse of discretion, we review constitutional challenges to probation conditions de novo. [Citation.]" (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).) "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

Defendant challenges both the social media restriction and the Internet restriction, alleging both that the trial court abused its discretion by imposing unreasonable conditions under the *Lent* test and that the conditions represent unconstitutionally overbroad restrictions on his First Amendment rights. This court has previously reviewed such restrictions in at least two published decisions.

In *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*), the defendant pleaded no contest to a charge of felony possession of child pornography after investigators found child pornography on the defendant's computer. (*Id.* at pp. 1343–1344.) The trial court placed defendant on three years' formal probation and imposed conditions of probation, including that defendant may not " 'enter any social networking sites' " or " 'have access to the Internet or any other on-line service through use of [his] computer or other electronic device at any location' " without the prior approval of the probation officer. (*Id.* at p. 1344.) Defendant did not object to these conditions. (*Id.* at p. 1345.) On appeal of the Internet access restriction,[2] this court held that the defendant forfeited his argument that this

---

[2] The defendant in *Pirali* did not challenge the social networking restriction. (*Pirali*, *supra*, 217 Cal.App.4th at p. 1343.)

12

condition was unreasonable under *Lent*, but that the defendant could still raise his argument that the condition was overbroad under the First Amendment. (*Id.* at p. 1347.) This court recognized that " '[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering.' [Citation.]" (*Id.* at p. 1348.) Therefore, "certain restrictions on 'access to the Internet necessarily curtail First Amendment rights.' [Citation.] It therefore follows that probation conditions restricting or prohibiting the use of a computer, or restricting or prohibiting access to the Internet, 'must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' [Citations.]" (*Ibid.*) Nonetheless, this court upheld the Internet restriction because the defendant was "not faced with a blanket prohibition" in that he could access the Internet with prior permission from his probation officer. (*Id.* at p. 1350.)

In *People v. Salvador* (2022) 83 Cal.App.5th 57 (*Salvador*), the defendant pleaded no contest to felony false imprisonment and misdemeanor sexual battery, and the trial court imposed a three-year term of probation that included social media and Internet restrictions, over defendant's objections that the conditions were unreasonable under *Lent* and violated his First Amendment rights. (*Id.* at pp. 59–61.) The defendant's actions occurred against women who lived in a space he rented and against a 15-year-old friend of the women. (*Id.* at pp. 61–62.) This court upheld the social media condition against the reasonableness and overbreadth challenges. With regard to the *Lent* test, this court observed that the defendant used a cell phone to exchange messages with the victims on social media, and it noted that "the connection between the defendant's use of social media and potential future sex offenses is more than just an abstract or hypothetical relationship; predators online commonly use social media to contact and groom minors." (*Salvador, supra,* at pp. 63–64, fn. omitted.) This court likewise rejected the defendant's overbreadth argument concerning the social media restriction, citing *Pirali* in concluding: "Any burden on Salvador's use of social media is reasonably tempered by his ability to obtain prior approval from the

13

probation officer.  And the use of social media is not so necessary to the activities of daily living that this requirement would unduly burden Salvador's rights."  (*Id.* at p. 66.)

With respect to the Internet restriction, however, this court found that *Pirali* was distinguishable and the condition was unconstitutionally overbroad, concluding:  "Here, the factual nexus was Salvador's use of social media to contact the victims, not his access to materials on any other part of the Internet.  The general restriction against Internet access thereby sweeps far more broadly than necessary to serve the purposes of the condition— preventing or deterring contact with minors for sexual purposes."  (*Salvador*, *supra*, 83 Cal.App.5th at p. 67.)  In addition, this court recognized that in the time following its decision in *Pirali*, "the Internet has become even more central and commonplace in the lives of ordinary people; it is now practically unavoidable in daily life.  Many more people today use the Internet to work from home, follow the news, or conduct business and commercial transactions such as banking and paying bills.  No valid purpose is served by preventing Salvador from engaging in the kinds of Internet access that have become common and ubiquitous—e.g., performing work-related tasks, accessing or commenting on news sites, or conducting commercial or business transactions in ways that require engaging in protected speech.  We conclude the limitation we relied on in *Pirali*—that the probationer could still use the Internet by obtaining prior approval from his probation officer—is not adequate here.  Access to some part of the Internet is so necessary and frequent as a part of daily life that it may become unduly burdensome to obtain a probation officer's approval for every use of it.  With respect to some offenses—e.g., possession or distribution of child pornography, as in *Pirali*—such a burdensome condition might be justified or necessary.  But in this case, it is not."  (*Ibid.*)  Thus, this court found the Internet restriction unconstitutionally overbroad, meaning it did not need to address the validity of the condition under *Lent*, and it struck the condition.  (*Ibid.*)

14

### 2. Analysis

Defendant asserts that both the social media and the Internet restrictions are unreasonable under *Lent* and unconstitutionally overbroad under the First Amendment. With regard to the reasonableness of the conditions, he argues: "The record contains no evidence that [defendant] used social media or the Internet to commit the crimes for which he was convicted – or that social media helped facilitate these crimes in any way." He recognizes that he " 'sent some inappropriate' cell phone text messages to the victim's half-sister, who is [defendant's] biological daughter," but he argues this is not relevant because he was not charged with or convicted of any crimes involving the victim's half-sister. With regard to the constitutionality of the conditions, he relies on *Salvador* to argue that the Internet restriction is overbroad, and he argues that the logic of *Salvador* regarding the Internet restriction also requires this court to strike the social media restriction because "[i]n our current times, social media sites are just as much 'central and commonplace in the lives of ordinary people' as the Internet itself, and social media sites are 'now practically unavoidable in daily life' just as the Internet itself is."

The Attorney General argues that both conditions are reasonable under *Lent*. However, the Attorney General concedes that the Internet restriction is unconstitutionally overbroad, citing *Salvador*. Thus, the Attorney General requests that this court remand the case to the trial court so the trial court can modify the Internet restriction.

We accept the Attorney General's concession that, based on this court's holding in *Salvador*, the Internet restriction as worded is unconstitutionally overbroad, and as a result, we need not determine whether it is reasonable under *Lent*. While screenshots of explicit Facebook Messenger communications defendant sent to the victim's half-sister were attached to a prosecution response to a defense motion and were discussed in the sentencing hearing, there is no indication in the record that defendant used the Internet more broadly to facilitate his crimes or related actions. Thus, as in *Salvador*, "the factual nexus was [defendant's] use of social media to contact [the victim's half-sister], not his access to

15

materials on any other part of the Internet." (*Salvador*, *supra*, 83 Cal.App.5th at p. 67.) In such a situation, pursuant to this court's holding in *Salvador*, a "general restriction against Internet access thereby sweeps far more broadly than necessary to serve the purposes of the condition—preventing or deterring contact with minors for sexual purposes." (*Ibid.*) Thus, the general Internet access restriction here is unconstitutionally overbroad. We therefore strike the portion of this probation condition that reads as follows: "The defendant shall not knowingly access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer."[3] We remand the matter to the trial court to consider whether to fashion a more tailored restriction concerning defendant's accessing of the Internet.

*Salvador* also supports that the social media restriction here is neither unreasonable under *Lent* nor unconstitutionally overbroad. As in *Salvador*, the trial court here was presented with evidence that defendant used social media to commit improper sexually motivated acts. Thus, as in *Salvador*, "the connection between the defendant's use of social media and potential future sex offenses is more than just an abstract or hypothetical relationship . . . ." (*Salvador*, *supra*, 83 Cal.App.5th at p. 64.) Defendant argues that his messages to the victim's half-sister are not relevant to the *Lent* analysis, because he was not charged with any crime against the victim's half-sister. However, to demonstrate that a probation condition is unreasonable under *Lent*, a defendant must show that all three of the *Lent* factors are established, not just the first factor that the condition " 'has no relationship to the crime of which the offender was convicted.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) Defendant has not established that the third *Lent* factor – that the condition requires or forbids conduct which is not reasonably related to future criminality – is met here. (*Ibid.*) Defendant was not charged with any crime regarding his sexually explicit messages to the

---

[3] Defendant does not challenge or address the last portion of the condition regarding his use of encryption; thus, we leave that portion of the condition intact.

16

victim's 13-year-old half-sister, but the trial court was nonetheless presented with information that defendant sent the messages. Courts may properly base probation conditions upon information presented to them, even if that information is "unrelated to a prior offense." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) Where defendant was convicted of sexually charged actions toward one of his minor daughters and sent sexually explicit messages to his other minor daughter through social media, a social media restriction is reasonably related to his future criminality. The screenshots of the messages indicate that defendant used Facebook Messenger (a social media site or application) to send the messages. Thus, the social media restriction involves " 'more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality,' " and the facts of this case demonstrate a specific relationship between the condition and preventing future criminality. (*Cota*, *supra*, 45 Cal.App.5th at p. 790.)

Thus, as in *Salvador*, the restriction regarding defendant's use of social media is neither unreasonable nor unconstitutionally overbroad, as any burden on his use of social media is "reasonably tempered by his ability to obtain prior approval from the probation officer," and "the use of social media is not so necessary to the activities of daily living that this requirement would unduly burden [defendant's] rights." (*Salvador*, *supra*, 83 Cal.App.5th at p. 66.) Defendant's assertion that *Salvador* was wrongly decided in this regard is not persuasive. While defendant asserts that "much of the general activity that occurs on the Internet has been redirected to social media sites," the sources he cites for this proposition merely state that many people use social media for purposes such as reading news accounts, searching for employment, and addressing customer service issues with businesses. Defendant does not show that these functions are unavailable on the broader Internet or that social media is the most effective or efficient way to carry out these activities. Defendant used a social media site and/or application to send sexually explicit messages to his 13-year-old daughter in addition to unlawfully touching his 11-year-old daughter. Therefore, the trial court properly concluded that the social media restriction was

17

an appropriate probation condition.  The trial court's determination was not an abuse of discretion with regard to the reasonableness of the condition, and pursuant to *Salvador*, we conclude upon de novo review that the social media condition is not unconstitutionally overbroad.  There is no evidence that the use of social media is so necessary to defendant that this condition would unduly burden his rights, particularly where he can obtain prior approval from his probation officer to engage in any social media activities.  We therefore find no error in the trial court's decision to impose the social media restriction condition on defendant's probation.  (*Moran*, *supra*, 1 Cal.5th at p. 403; *Sheena*, *supra*, 245 Cal.App.4th at p. 723.)

### C. *Criminal Protective Order*

Finally, defendant requests that this court order box 14 of the criminal protective order to be checked to carry out the trial court's intent that defendant be permitted to engage in supervised visitation with the victim if permitted by the family court.  The Attorney General agrees.  "It is true that, apart from statute, courts have inherent authority to correct clerical errors in a sentence at any time.  'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.  [Citations.]  The power exists independently of statute and may be exercised in criminal as well as in civil cases.  [Citation.]  The power is unaffected by the pendency of an appeal or a habeas corpus proceeding.  [Citation.]  The court may correct such errors on its own motion or upon the application of the parties.'  [Citation.]"  (*People v. Kim* (2012) 212 Cal.4th 117, 123–124.)  Based on the trial court's comments and its marking of boxes 14(a) and 14(b), which are not applicable without box 14 marked, it appears the trial court intended that box 14 of the criminal protective order should be marked.  Accordingly, we will order the trial court to address box 14 upon remand.

### IV.  DISPOSITION

The order of probation dated September 2, 2022, is reversed, and the matter is remanded to the trial court with the following instructions.  The trial court shall strike the

portion of the Internet restriction condition (Specialized Search Condition No. 7) that reads as follows: "The defendant shall not knowingly access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer." The trial court may consider whether to fashion a more tailored restriction regarding defendant's accessing of the Internet. The trial court shall also ensure that the order of probation contains the conditions outlined in Penal Code section 1203.097. In addition, the trial court shall prepare a corrected criminal protective order that addresses box 14.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

WILSON, J.

_____

BROMBERG, J.

*People v. Mosqueda-Castillo*
**H050363**